IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TVT 2.0 LLC, a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH JAMES FRONTIERE, an individual; QUAD M SOLUTIONS, INC., a Texas corporation; PR345, INC. dba QUAD M STAFFING, a Texas corporation; OPENAXESS, INC., a Texas corporation; PRIMEAXESS, INC., a Texas corporation,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION GRANTING MOTION TO STAY AND COMPEL ARBITRATION<br><br>Case No. 2:23-cv-211-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin Pead |

The above-captioned matter concerns a contractual dispute and alleged breach of loan repayments between the lender, Plaintiff TVT 2.0 LLC ("TVT 2.0"), and Defendants Joseph James Frontiere; Quad M Solutions, Inc.; 345, Inc. dba Quad M Staffing; Openaxess, Inc.; and Primeaxess, Inc. The Defendants have moved to stay the action and compel arbitration, citing an agreement to arbitrate in the loan documents. (ECF No. 9.) Having considered the briefing and relevant law, the court finds that oral argument is unnecessary. See DUCivR 7-1(g). For the following reasons, the court grants the Defendants' motion.

1

## FACTUAL BACKGROUND

On December 19, 2022,[1] the parties signed a Business Loan and Security Agreement (the "Agreement"), in which the Plaintiff agreed to loan Defendants $2,025,000.[2] (Decl. Shane Heskin, Ex. A, ECF No. 10-1, at 4.) The Agreement contains the following provisions relating to jurisdiction and arbitration:

> **32. CONSENT TO JURISDICTION AND VENUE.** Subject to Section 33 below, Borrower, Guarantors and Lender each consent to the jurisdiction of the federal and state courts [and] agree that any action or proceeding to enforce or arising out of this Agreement may only be brought in any court of the State of Utah or in the United States District Court for the District of Utah ….
>
> **33. ARBITRATION.** To the extent that a claim or dispute arises out of, or in relation to this Agreement, including without limitation, the terms, construction, interpretation, performance, termination, breach, or enforceability of this Agreement, the parties (Borrower, Guarantors, and Lender) hereby agree that the claim or dispute shall be, at the election of any party within thirty (30) days after the claim or dispute arises, resolved by mandatory binding arbitration in Utah. The parties agree that the arbitration shall be administered by JAMS [formerly known as Judicial Arbitration and Mediation Services, Inc.] ….

(Id. ¶¶ 32-33, ECF No. 10-1, at 15.)

The Agreement also contains a provision about notice stating that "notice under this Agreement must be in writing. Notice to Lender will be deemed received by Lender at address sent [sic] forth in Section 47 by U.S. mail …; in person; by registered mail; by certified mail; … or when sent by electronic mail." (Id. ¶ 38, ECF No. 10-1, at 16.)

The Agreement was signed by Joseph James Frontiere and Andrew Fellus. (Id., ECF

---

[1] In its Complaint, TVT 2.0 cites "[o]n or about December 16, 2022" as the date of the Agreement. (See Compl. ¶ 10, ECF No. 2-1, at 4.) The difference is immaterial, but the court considers December 19, 2022, as the correct date because it is the date on which Mr. Frontiere signed the Agreement. (See Heskin Decl., Ex. A., ECF No. 10-1, at 2, 21.)
[2] The borrowers are listed as Quad M Solutions, Inc.; PR345, Inc. / dba Quad M Staffing; Openaxess, Inc.; and Primeaxess, Inc. (Heskin Decl., Ex. A, ECF No. 10-1, at 24.) Mr. Frontiere is listed as guarantor. (Id. at 21.)

No. 10-1, at 21). Various addenda to the Agreement are signed by Joseph Frontiere, as CEO and chairman of the board of Quad M Solutions, and by Andrew Fellus, as CEO of TVT 2.0. (See id., ECF No. 10-1, at 23-29.) On the final DocuSign page, Mr. Fellus's email is listed as contracts@tvtcapital.com. (Id., ECF No. 10-1, at 30.)

TVT 2.0 disbursed the agreed funds to the Defendants on or around December 22, 2022. (Compl. ¶ 21.) The Defendants made three payments on the loan in January 2023.[3] (Id. ¶ 24.) According to a demand letter that TVT 2.0 sent to the Defendants on February 27, 2023, the Defendants ceased making payments on the loan after January 18, 2023. (See Compl., Ex. B, ECF No. 2-1, at 44.)

Before receipt of the demand letter, on February 7, 2023, counsel for Defendants sent an email to Andrew Fellus at ceo@tvtcapital.com which stated that Quad M Solutions wished to "respectfully place you on notice that we are demanding arbitration under AAA [American Arbitration Association]." (Heskin Decl., Ex. C, ECF No. 10-3, at 2.)

TVT 2.0's counsel responded to that email with the following concern: "Please be advised that your request to arbitrate is defective. TVT 2.0 LLC has no contractual or other obligation to arbitrate before the American Arbitration Association." (Compl., Ex. C, ECF No. 2-1, at 47.)

Attempts to resolve the matter informally broke down and TVT 2.0 filed an action on

---

[3] The total amount of these repayments appears to be $248,062.52, which would correspond to four of the required weekly payments at $62,015.63. (Compare Heskin Decl., Ex. A, ECF No. 10-1, at 4 (listing total repayment amount as $2,976,750.00) with Compl. ¶ 42 (listing unpaid repayment amount as $2,728,687.48). See also Heskin Decl., Ex. A, ECF No. 10-1, at 4 (listing weekly payment amount as $62,015.63).) The parties' submissions are silent as to whether the Defendants made any payments in December 2022 or a fourth payment in January 2023; but the parties do not dispute that Defendants made at least three weekly payments in January 2023.

3

March 2, 2023, alleging breach of contract, breach of guarantee, and unjust enrichment. (See Compl. ¶¶ 36-63.) The Defendants removed that action to federal court on March 31, 2023 (ECF No. 2), and then brought a motion to stay and compel arbitration (ECF No. 9). The Defendants ask the court to enforce the Agreement's arbitration clause and also request attorney's fees.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") states that arbitration clauses are "valid, irrevocable, and enforceable" except on the same grounds that exist for revocation of the contract. 9 U.S.C. § 2. Whether a party agreed to arbitration "is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate." Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors, 59 F.4th 1090, 1097 (10th Cir. 2023) (quoting Ragab v. Howard, 841 F.3d 1134, 1137 (10th Cir. 2016)). But because the FAA reflects an "emphatic federal policy" in favor of arbitration, Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 533 (2012) (citation omitted), "all doubts must be resolved in favor of arbitration." Harrison, 59 F.4th at 1097 (quoting Ragab, 841 F.3d at 1137).

## ANALYSIS

As a preliminary matter, the court finds there is no real dispute that the parties intended the arbitration clause to be effective. TVT 2.0 has agreed that enforcement of a similar arbitration clause (which the Plaintiff presumably drafted) was proper where effective notice was provided. See TVT 2.0 LLC v. Raptor Metal Recycling, LLC, No. 2:22-cv-819-DBB, 2023 WL 1930229, at *1 (D. Utah Feb. 10, 2023).

Similarly, the court finds no conflict between the arbitration and jurisdiction clauses of the Agreement. Section 32, which provides for jurisdiction and venue in the state and federal

courts of Utah, states that it is "[s]ubject to Section 33 [i.e., the arbitration clause.]" Where effective notice is provided, the Agreement is clear that a request to arbitrate supersedes the jurisdiction and venue provisions of Section 32.

Therefore, the only question before the court is whether the Defendants provided timely and effective notice of their request to arbitrate.

1. **Timeliness**

TVT 2.0 argues that the email from Defendants' counsel to Mr. Fellus on February 7 was untimely because it was not sent within 30 days after the dispute concerning the Agreement arose. (See Heskin Decl., Ex. A ¶ 33, ECF No. 10-1, at 15 (requiring arbitration demand to be made within 30 days after a claim or dispute arises).) In that email, the Defendants asserted that the Agreement violated Texas usury laws. (See Compl., Ex. C, ECF No. 2-1, at 48.) TVT 2.0 contends that because the Defendants knew or should have known about the contractual provisions (and any conflicts with Texas law) since the date they signed the Agreement—December 19, 2022—, they were therefore required to request arbitration by mid-January at the latest. (Defs.' Opp'n, at 11-12, ECF No. 13.)

The court finds this assertion unconvincing. "Generally, a cause of action accrues and the relevant statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action." S & G Inc. v. Intermountain Power Agency, 913 P.2d 735, 740 (Utah 1996) (citation omitted). For a breach of contract claim, a cause of action accrues at the time of breach. See id. ("A contract action ordinarily accrues at the time of breach."). Here, TVT 2.0 admits that the Defendants made at least three payments under the terms of the Agreement in January 2023. (See Compl. ¶ 24.) At the earliest, the Plaintiff's breach of contract claim arose after January 18, 2023. (See Compl., Ex. B, ECF No. 2-1, at 44 (demand letter

5

stating that "Borrower has failed to make the required payments after January 18, 2023").)

Regardless of the Defendants' planned defenses to that breach of contract claim, the court finds no reason to view the parties' dispute as arising on one date for purposes of the Plaintiff's lawsuit and on an earlier date for purposes of enforcement of the arbitration clause. That clause states that a party may request arbitration "[t]o the extent that a claim or dispute arises out of, or in relation to this Agreement…." (Heskin Decl., Ex. A ¶ 33, ECF No. 10-1, at 15.) The claim or dispute between these parties is premised on the Defendants' alleged non-performance of their repayment obligations under the Agreement and did not arise until Defendants stopped making payments. The Defendants' assertion that Texas usury laws preclude the enforcement of the contract is a defense to the dispute but not the crux of the dispute itself, and whether the Defendants have waived any defenses to allegations of non-performance is a separate question from the Defendants' right to invoke the arbitration clause.

The Defendants sent their request to arbitrate within 30 days after the Defendants stopped making payments under the contract. Therefore, the court finds that the request was timely.

**2. Effective Notice**

Even if the Defendants made a timely request to arbitrate, TVT 2.0 asserts that the notice was ineffective under the contract because the email sent by Defendants' counsel on February 7 1) was sent to a non-party; and 2) invoked the incorrect arbitration body. The court is not persuaded by either argument.

The Defendants sent their arbitration request by email to Mr. Fellus at ceo@tvtcapital.com. There is no contention that Mr. Fellus did not receive this email, and counsel for TVT 2.0 responded to the email the following day. (See Email from Erik A. Christiansen dated February 8, 2023, Compl., Ex. C, ECF No. 2-1, at 47.) Mr. Fellus signed the

Agreement and multiple addenda as CEO of TVT 2.0.  (See Compl., Ex. A, ECF No. 2-1, at 33, 35, 37, 39, 41-42.)  On the DocuSign form, Mr. Fellus listed his email as contracts@tvtcapital.com.  The logo for TVT Capital appears throughout the Agreement (see id.) and in the letterhead to the demand letter sent from TVT 2.0 advising the Defendants that they were in default.  (See Compl., Ex. B, ECF No. 2-1, at 44.)  While TVT Capital and TVT 2.0 are distinct entities, the Defendants provided effective notice to TVT 2.0 of their arbitration demand by emailing its CEO (who also signed the Agreement)—even if the Defendants used an email address associated with TVT Capital.

TVT 2.0 argues that the Defendants could only provide effective notice under the Agreement by sending a request in writing to the address or email listed in Section 47 of the Agreement.  But the notice provision of the contract does not place limitations on how email notice may be provided.  Instead, it states that "notice under this Agreement must be in writing.  Notice to Lender will be deemed received by Lender at address sent [sic] forth in Section 47 by U.S. mail …; in person; by registered mail; by certified mail; … or when sent by electronic mail."  (Heskin Decl., Ex. A ¶ 38, ECF No. 10-1, at 16.)  The reference to Section 47 applies to notice provided by U.S. mail; there is no similar reference related to email.  Furthermore, Section 47 provides an email address for "questions or comments about your Loan" and does not specify that any notice referenced elsewhere in the Agreement must be sent to this email address.  (Id. ¶ 47, ECF No. 10-1, at 18.)

Finally, the court notes that Plaintiff's counsel did not raise any of these objections in its email response to the Defendants' arbitration request.  Rather, the email stated: "Please be advised that your request to arbitrate is defective.  TVT 2.0 LLC has no contractual or other obligation to arbitrate before the American Arbitration Association."  (Compl., Ex. C,

7

ECF No. 2-1, at 47.)  The message implied that the Defendants' arbitration request was defective due to the Defendants' failure to cite JAMS as the contractually required arbitration body.  No other reason was stated.

In the absence of any contractual requirements specifying how email notice must be provided, the court finds that the Defendants provided effective notice by emailing their request to arbitrate to Mr. Fellus, a signatory to the Agreement and the CEO of TVT 2.0.

The court also finds that the Defendants' failure to specify JAMS as the correct arbitration body did not doom their request.  While the Agreement requires arbitration to occur in front of JAMS (a requirement which the Defendants have since recognized, see Heskin Decl., Ex. D., ECF No. 10-4, at 2 ("Then we will agree to JAMS.")), the Defendants effectively placed the Plaintiff on notice of their desire to invoke the Agreement's arbitration clause through their email "demanding arbitration[.]"  (Compl., Ex. C, ECF No. 2-1, at 48.)

For these reasons, and because "all doubts must be resolved in favor of arbitration[,]" Harrison, 59 F.4th at 1097 (quoting Ragab, 841 F.3d at 1137), the court finds that the Defendants provided timely and effective notice of their arbitration demand.

3. **Attorney's Fees**

Although not fatal to their request to arbitrate, the Defendants' mistake in citing the wrong arbitration body (and the Defendants' failure to clarify their request until after the Plaintiff filed its lawsuit) did provide the Plaintiff a good-faith reason for filing this action and for opposing the Defendants' motion to compel arbitration.  The court therefore declines to award the Defendants attorney's fees for the costs of bringing their motion.

**ORDER**

For the foregoing reasons, the court grants the Defendants' Motion to Stay and Compel

Arbitration (ECF No. 9). The court will stay this action pending the outcome of arbitration. The parties must provide the court with a status report within one year from the date of this order or within 30 days of an arbitration decision, whichever is sooner.

DATED this 29th day of August, 2023.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge